## STEWART v. EATON.

1. COURTS — MORTGAGE FORECLOSURE — JURISDICTION — PARTIES —
ACTION FOR DEFICIENCY IN OTHER STATES—DEFENSES.

   A chancery court which has jurisdiction of the subject matter and
   the parties in a mortgage foreclosure proceeding would have
   jurisdiction to enter a decree for deficiency which would be a
   proper basis for action at law in another State, in which later
   action a defendant over whom the court in the first State had
   had jurisdiction could not interpose any defense that he might
   have raised and litigated in the foreclosure proceedings.

2. CONSTITUTIONAL LAW—TERRITORIAL LIMIT OF JURISDICTION.

   The authority of every tribunal is necessarily restricted by the
   territorial limits of the State in which it is established and any
   attempt to exercise authority beyond those limits would be
   deemed an illegitimate assumption of power in every other
   forum.

3. SAME—PRIVILEGES AND IMMUNITIES—RIGHT TO SUE.

   Under the Constitution of the United States the citizens of any
   State have the right to sue in the courts of another State upon
   the same terms as citizens of the latter State may sue (U. S.
   Const. art. 4, §§ 1, 2; am. 5; am. 14, § 1).

4. MORTGAGES—FORECLOSURE—ACTION FOR DEFICIENCY BY NONRESI-
DENT.

   The right of a resident of this State to institute and maintain a
   suit for the unpaid balance of a real estate mortgage note after
   a decree of a court of this State foreclosing the mortgage secur-
   ing the same, being limited to where authorization to do so has
   been given by the court, a nonresident is likewise restricted
   (3 Comp. Laws 1929, § 14367).

5. SAME—DEFICIENCY—WAIVER—STATUTES.

   In action against a mortgagor for deficiency under a mortgage
   which had been foreclosed in chancery, compliance with statute,
   requiring that plaintiff in foreclosure suit obtain authority to

maintain action for unpaid balance, was waived by defendant where he failed to move to stay the proceeding and went to trial (3 Comp. Laws 1929, § 14367).

6. Judgment—Nonresident—Due Process—Personal Service.

A judgment or decree rendered by a court would have no binding effect personally on a nonresident defendant upon whom no personal service of process had been made and who had not voluntarily appeared.

7. Same—Full Faith and Credit—Due Process—Notice—Jurisdiction.

The doctrine of full faith and credit was not designed to displace the principle of natural justice which requires a person to have notice of a suit before he can be conclusively bound by the result nor those rules of public law which protect persons and property within one State from the exercise of jurisdiction over them by another (U. S. Const. art. 4, § 1).

8. Same—Full Faith and Credit—Due Process.

To the end that the proceedings of the tribunal of one State may be valid and entitled to be accorded full faith and credit in another State it is essential that the tribunal be competent, by its Constitution and the law of its creation, to pass upon the subject matter of the suit and, if that involves a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State or by his voluntary appearance (U. S. Const. art. 4, § 1; am. 5; am. 14, § 1).

9. Same—Foreign Judgment—Due Process.

A foreign judgment, to be valid and enforceable, must have been rendered on a service of process which is the due process of law within the Federal Constitution (U. S. Const. art. 4, § 1; am. 5; am. 14, § 1).

10. Same — Foreign Judgment — Extraterritorial Force — Res Judicata.

A foreign judgment has no extraterritorial force or validity whatsoever as a personal judgment against a defendant who was not personally served with process and who made no voluntary appearance and may not be pleaded against him in the courts of his domicile as an adjudication of the same subject matter.

11. PROCESS—JURISDICTION OVER NONRESIDENTS—SERVICE OUTSIDE
OF STATE—PUBLICATION.

> To secure personal jurisdiction over nonresidents, a personal serv-
> ice beyond the limits of the State is equally ineffective as is
> constructive service by publication.

12. JUDGMENT — JURISDICTION — PERSONAL JUDGMENT — SERVICE OF
PROCESS—CONSENT—PROCEEDING QUASI IN REM.

> The process of a court runs legally only within the limits of its
> jurisdiction and it is only by service made within those limits
> that a right to recognize a personal judgment against a non-
> resident without his consent is acquired and, except as to the
> disposition of the res, such is the case even though the personal
> judgment be rendered in a proceeding quasi in rem.

13. ACTION—PROCEEDING IN REM.

> In one sense a proceeding in rem is one taken directly against
> . property and has for its object the disposition of the property
> without reference to the title of individual claimants, although
> in a larger and more general sense the term is applied to acts
> between parties where the direct object is to reach and dispose
> of property owned by them or of some interest therein, such as
> attachment of debtors' property, partition of real estate, fore-
> closure of mortgages, and enforcement of liens.

14. COURTS—DUE PROCESS—CONSTRUCTIVE NOTICE TO NONRESIDENTS
—JURISDICTION.

> A State, through its courts, may proceed to a final decree respect-
> ing the ownership of lands within its limits upon constructive
> notice to nonresident defendants but that gives it no authority
> to do more than to enforce the judgment against the property
> within the jurisdiction of the court.

15. JUDGMENT—FULL FAITH AND CREDIT—EVIDENCE—JURISDICTION.

> The constitutional provision for giving full faith and credit to
> the judicial proceedings of other States relates only to the
> effect of such proceedings as evidence or as a bar to further
> litigation rather than to jurisdiction (U. S. Const. art. 4, § 1).

16. SAME—FOREIGN JUDGMENT—COLLECTION.

> In order to proceed for the collection of a judgment recovered in
> another State, the creditor must first sue upon it in the State
> where he wishes to enforce it and recover a judgment upon it,

17. SAME—FORECLOSURE—ILLINOIS—SERVICE OF PROCESS—APPEAR-
ANCE.

Although decree of Illinois court in mortgage foreclosure suit in
chancery was valid and binding upon the *res*, real estate in
Illinois, it had no binding force and effect personally upon
mortgagor, a resident of this State, where no personal service
of process was made upon him within the jurisdiction of the
Illinois court and no personal appearance entered by him or his
attorney in such proceedings.

18. MORTGAGES—PERSONAL LIABILITY OF MORTGAGOR—JURISDICTION—
FORECLOSURE—ASSUMPSIT—OTHER STATES.

Circuit court of this State had jurisdiction in action of assumpsit
to determine matter of mortgagor's personal liability on note
and mortgage securing it on property located in another State,
which property defendant had sold long before equity fore-
closure proceedings in other State were commenced, and al-
though he may have had knowledge of such proceedings he had
neither appeared in nor been served with process in such fore-
closure proceedings, since a court of the other State could not
establish personal liability of defendant in absence of jurisdic-
tion over him.

19. SAME — FORECLOSURE — PERSONAL LIABILITY — RES JUDICATA —
ESTOPPEL—EXTENSION OF TIME—INADEQUACY OF SALE PRICE—
NONRESIDENT'S DEFENSES.

Defendant mortgagor's personal liability under mortgage on
Illinois real estate not being adjudicable by Illinois court in
suit to foreclose mortgage so as to bind such defendant because
service of process had not been made nor appearance filed by
him or his attorney, such matter is not *res judicata* in action of
assumpsit in this State for balance due on note, hence may be
determined notwithstanding defendant may have known of
pendency of foreclosure proceedings; nor is defendant estopped
from raising defense that plaintiff and his assignors had ex-
tended time of payment under the mortgage to defendant's
grantee, and sold the premises to himself at the sale at a
grossly inadequate price.

20. SAME—ABUSE OF POWER OF SALE—ACTION OF MORTGAGOR.

A mortgagor, who has conveyed his equity of redemption but re-
mains personally liable upon the mortgage note, and who has
been compelled to pay the balance due thereon, after the pro-
ceeds of a sale by the mortgagee under the power of sale con-
tained in the mortgage have been applied upon the note, may

maintain an action against the mortgagee for misconduct in conducting the sale, by reason of which a smaller sum was obtained than otherwise would have been.

21. SAME—FORECLOSURE—SUFFICIENCY OF PRICE UPON SALE TO MORTGAGEE.

In a suit for deficiency against a mortgagor who was not the owner of the equity of redemption at the time of the foreclosure sale, he can show that the sale was not properly conducted, and that a higher price should have been obtained for the property, especially if the holder of the mortgage was the purchaser.

22. SAME—FORECLOSURE BY ADVERTISEMENT—STATE.

The validity of foreclosure sales by advertisement under statute authorizing same depend upon the power contained in the mortgage giving to the mortgagee the right to foreclose the same and the inherent power of the State over titles to lands within their respective borders (3 Comp. Laws 1929, § 14425).

23. COURTS—PROCEEDING IN REM—STATE.

There is jurisdiction in a court of a State by a proceeding *in rem* to affect things within the jurisdiction of the court in consequence of the authority which government possesses over things within its borders.

24. MORTGAGES—FORECLOSURE—PERSONAL SERVICE—JURISDICTION.

The basis of jurisdiction to foreclose a mortgage in equity and to make a valid decree of foreclosure by sale of the real estate, and thus affect the title to the land without personal service upon the defendant as well as jurisdiction to foreclose by advertisement without personal service rests upon the inherent authority of the State over all real estate within its borders (3 Comp. Laws 1929, § 14425).

25. SAME—DEFICIENCY—JURISDICTION OVER DEFENDENT.

No deficiency judgment or decree, binding upon a mortgagor personally, can be rendered except upon suit brought and jurisdiction acquired over defendant by personal service of process within the jurisdiction of the court or by the defendant's voluntary appearance in person or by attorney therein.

26. SAME—DEFICIENCY—JURISDICTION—DUE PROCESS.

A decree for deficiency, entered by court which had not acquired jurisdiction in mortgage foreclosure proceedings over defendant personally would have no validity in the State where ren-

dered nor in another State where enforcement of it was sought because the fundamental requisite of due process of law, the opportunity to be heard, is wanting (U. S. Const. am. 14, § 1).

27. SAME—ACTION FOR DEFICIENCY—DEFENSES OPEN TO MORTGAGOR AFTER FORECLOSURE.

Mortgagor, sued in action of assumpsit on note and mortgage for deficiency arising in proceedings to foreclose mortgage in equity which had been brought in another State and to which defendant was not a party, may show anything in his defense that he could show in case of foreclosure by advertisement, such as inadequacy of amount bid on the foreclosure, as he can be personally heard and make defense in no other way.

28. SAME—ASSUMPSIT—DEFICIENCY—FAIR MARKET VALUE—BURDEN OF PROOF.

In action of assumpsit to recover deficiency from defendant mortgagor who was not owner of premises at time of foreclosure proceedings and not a party thereto, defendant, interposing defense that sale to mortgagee was not had for a sufficient price, has burden of showing that a higher price should have been obtained, the fair market value of the premises sold being a question of fact.

29. TRIAL—REOPENING PROOFS—DISCRETION OF COURT.

Trial court's denial of motion to reopen proofs in action of assumpsit to recover deficiency on a note and mortgage which had been foreclosed on real estate located in another State after case had been submitted to court to enable plaintiff to offer proof of publication and mailing of notice to defendant *held,* not an abuse of discretion lodged in trial court as to disposition of such motions since admission of facts sought to be shown could make no difference in disposition of case.

30. APPEAL AND ERROR — QUESTIONS REVIEWABLE — EXTENSION OF TIME UNDER MORTGAGE.

Whether or not extension of time granted by mortgagee's assignee to subsequent holder of mortgagor's interest amounted to release of mortgagor from liability under the mortgage *held,* unnecessary to decision where mortgagor was found not liable for deficiency because property was worth substantially more than the amount bid therefor.

WIEST and CHANDLER, JJ., dissenting.

Appeal from Ottawa; Miles (Fred T.), J. Submitted October 12, 1938. (Docket No. 88, Calendar No. 40,205.) Decided February 2, 1939.

Assumpsit by Rt. Rev. George Craig Stewart, as Bishop of the Protestant Episcopal Church in the diocese of Chicago, and his successors in office, a corporation sole, against William L. Eaton for sums allegedly due on a promissory note. Judgment for defendant. Plaintiff appeals. Affirmed.

*Warner, Norcross & Judd* and *Joseph Shulsky,* for plaintiff.

*Lokker & Den Herder, Butterfield, Keeney & Amberg* and *Richard Lindland,* for defendant.

Potter, J. This is an action in assumpsit brought by plaintiff against defendant to recover the balance claimed to be due upon a promissory note. The note sued upon was, when given, secured by a mortgage on Chicago real estate. The mortgage securing the note was foreclosed in chancery in Illinois and the mortgaged property sold to satisfy the mortgage. There was no personal service of process upon defendant in the Illinois suit to foreclose the mortgage. There was substituted service upon defendant by an order of publication made by the Illinois court and duly published. The mortgaged property sold in Illinois pursuant to the decree of the court there made brought less than the amount of the note sued upon. Plaintiff seeks to recover in this suit an amount arrived at by deducting from the total amount due upon the note, both principal and interest, the amount realized from the sale of the mortgaged property, less costs.

Defendant admits giving the note and mortgage sued upon but claims he sold the mortgaged property in June, 1927; that the trustees of the mortgage had, for a valuable consideration, extended the time of payment to the subsequent purchasers of the property; that no demand was made upon him for payment for a period of nine years; that no process was served upon him in the foreclosure case; that he did not enter his appearance in the Illinois court in the foreclosure proceeding; that the mortgaged property was worth much more than the amount due upon the note and mortgage; that it was worth at least $50,000 and was sold for $18,000, a price so inadequate as to shock the conscience of the court; and that plaintiff and his predecessors in title to the mortgage note were guilty of fraud and deceit, laches, and bad faith, to defendant's injury, and should be estopped from obtaining judgment.

The Illinois property was purchased by the holder of the mortgage. The case was tried before the court without a jury. There was ample evidence to sustain defendant's claim of the value of the property and its sale for an inadequate price, and there was proof to show that the predecessors in title of the plaintiff in the Illinois court, and plaintiff here, extended the time of payment to the subsequent owners of the real estate. This testimony was not disputed. The trial court held, for both reasons claimed by defendant, plaintiff could not recover.

It is claimed that where there is a sale of the mortgaged real estate under a chancery decree regularly made and entered, and the report thereof confirmed, there is a judicial determination upon which a suit like that at bar may be predicated to recover the balance due, and that unless the sale is set aside, there is no defense to an action at law. It will be conceded

that if the Illinois court in chancery in the foreclosure proceedings had acquired jurisdiction of the subject matter and of the parties, this would have been so, because the defendant would have been bound to make any defense which he had in the foreclosure proceedings, and, having had an opportunity to litigate the question, the foreclosure proceedings, if regular, would have been conclusive upon him in this suit. It would have been sufficient to say the questions might have been raised and litigated. *Bond* v. *Markstrum,* 102 Mich. 11. That is not this case.

The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established. Any attempt to exercise authority beyond those limits would be deemed in every other forum, as has been said, an illegitimate assumption of power. *D'Arcy* v. *Ketchum,* 11 How. (52 U. S.) 165; *Pennoyer* v. *Neff,* 95 U. S. 714.

Many of the States prior to the adoption of the Constitution passed laws discriminating against the people of other States and providing, among other things, that nonresidents could not institute a suit therein. This was true in Massachusetts, and in Connecticut; and as late as March, 1787, the legislature of Rhode Island passed an act excluding citizens of Connecticut from the benefit of the laws of Rhode Island, and thereupon Connecticut passed a law excluding the citizens of Rhode Island from the right to sue in the courts of Connecticut. Warren, The Supreme Court and Sovereign States, p. 133. These principles which governed prior to the adoption of the Constitution were intended to be changed thereby.

Article 4, § 2, of the Constitution of the United States provides that the citizens of each State shall

be entitled to all privileges and immunities of citizens in the several States.

Article 4, § 1, provides that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State.

Article 5 of the amendments to the Constitution of the United States provides that no person shall be deprived of life, liberty or property without due process of law.

Article 14, § 1, of the amendments to the Constitution provides that no State shall deprive any person of life, liberty or property without due process of law.

One of the effects of these various constitutional provisions and amendments is to give to the citizens of any State the right to sue in the courts of this State upon the same terms as citizens of this State may sue.

A plaintiff resident in this State may not institute and maintain a suit for the unpaid balance of a real estate mortgage note after a Michigan decree foreclosing the mortgage securing the same, unless authorized so to do by the court. 3 Comp. Laws 1929, § 14367 (Stat. Ann. § 27.1135).

If plaintiff herein may maintain a suit in this State for an unpaid balance claimed to be due upon the note in question without being authorized so to do by any court, he, as a nonresident plaintiff, may exercise a privilege and power denied by statute to residents of this State who may seek to sue to recover a deficiency judgment on a mortgage note after foreclosure decree in this State. It was once said that "ye shall have one manner of law, as well for the stranger, as for one of your own country." Leviticus, 24:22. Though this is still the rule, we find it unnecessary to decide whether compliance

with the statute above cited prescribed by the *lex fori* was necessary, and, if so, how it should be complied with, for in *Goodrich* v. *White,* 39 Mich. 489, it was held this statute was waived by defendant not moving to stay the proceedings and in going to trial, as was done in this case.

Passing this question, any judgment or decree which might have been rendered in the State of Illinois could have no binding effect upon the defendant personally. *Pennoyer* v. *Neff, supra.* The doctrine of full faith and credit was not designed to displace the principle of natural justice which requires a person to have notice of a suit before he can be conclusively bound by the result, nor those rules of public law which protect persons' and property within one State from the exercise of jurisdiction over them by another. *Lafayette Insurance Co.* v. *French,* 18 How. (59 U. S.) 404; *Pennoyer* v. *Neff, supra.* To give such proceedings any validity, there must be a tribunal competent by its Constitution, that is, by the law of its creation, to pass upon the subject matter of the suit, and if that involves a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the State or by his voluntary appearance. *Pennoyer* v. *Neff, supra.* A foreign judgment, to be valid and enforceable, must have been rendered on a service of process which is the due process of law within the Federal Constitution. A judgment recovered in another State will not be accorded recognition as a valid and binding adjudication unless there was actual personal service on defendant or a voluntary appearance by defendant. *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394 (37 Sup. Ct. 152). Such a judgment has no extraterritorial force or validity whatsoever as a personal judgment against the defendant and may not, therefore, be pleaded against

him in the courts of his domicile as an adjudication of the same subject matter. *Pennoyer* v. *Neff, supra; Galpin* v. *Page,* 18 Wall. (85 U. S.) 350; *Cooper* v. *Reynolds,* 10 Wall. (77 U. S.) 308; *Green* v. *Van Buskirk,* 7 Wall. (74 U. S.) 139.

To secure personal jurisdiction over nonresidents, a personal service beyond the limits of the State is equally ineffective as is constructive service by publication.  The process of a court runs legally only within the limits of its jurisdiction and it is only by service made within those limits that a right to recognize a personal judgment against a nonresident without his consent is acquired. *Sugg* v. *Thornton,* 132 U. S. 524 (10 Sup. Ct. 163); *De La Montanya* v. *De La Montanya,* 112 Cal. 101 (44 Pac. 345, 32 L. R. A. 82, 53 Am. St. Rep. 165); *Atherton* v. *Atherton,* 181 U. S. 155 (21 Sup. Ct. 544); McGehee, Due Process of Law, p. 92.  The same rule obtains in a proceeding *quasi in rem* as to the validity of a personal judgment attempting to determine the obligations of the defendant except as to the disposition of the *res.  Freeman* v. *Alderson,* 119 U. S. 185 (7 Sup. Ct. 165); *Boswell* v. *Otis,* 9 How. (50 U. S.) 336.

A proceeding *in rem* is one taken directly against property and has for its object the disposition of the property without reference to the title of individual claimants.  But in a larger and more general sense, the terms are applied to acts between parties where the direct object is to reach and dispose of property owned by them or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien.  So far as they affect property in the State, they are substantially proceedings *in rem* in the broader sense which we have mentioned. *Pennoyer* v. *Neff, supra; Grannis* v. *Ordean,* 234 U. S. 385 (34 Sup. Ct. 779).

There is no question but that a State, through its courts, may proceed to a final decree respecting the ownership of lands within its limits upon constructive notice to defendants who reside beyond the reach of process. But that gives it no authority to do more than to enforce the judgment against the property within the jurisdiction of the court. *Pennoyer* v. *Neff, supra; Huling* v. *Railway,* 130 U. S. 559 (9 Sup. Ct. 603) ; *Arndt* v. *Griggs,* 134 U. S. 316 (10 Sup. Ct. 557) ; *Roller* v. *Holly,* 176 U. S. 398 (20 Sup. Ct. 410) ; *Grannis* v. *Ordean, supra.*

The constitutional provision for giving full faith and credit to the judicial proceedings of other States relates only to the effect of such proceedings as evidence or as a bar to further litigation. *Chicago & Alton R. Co.* v. *Wiggins Ferry Co.,* 108 U. S. 18 (1 Sup. Ct. 614); *M'Elmoyle* v. *Cohen,* 13 Pet. (38 U. S.) 312; 34 C. J. p. 1137.

"Those provisions establish a *rule of evidence,* rather than of jurisdiction." *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, 291 (8 Sup. Ct. 1370).

"The Constitution did not mean to confer any new power on the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the States domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them *as evidence.*" *Cole* v. *Cunningham,* 133 U. S. 107 (10 Sup. Ct. 269).

In order to proceed for the collection of a judgment recovered in another State, the creditor must first sue upon it in the State where he wishes to enforce it and recover a judgment upon it. *Cole* v. *Cunningham, supra; Wisconsin* v. *Pelican Ins. Co., supra; M'Elmoyle* v. *Cohen, supra.*

The decree of the Illinois chancery court and the proceedings had thereunder to sell the real estate were, so far as this record shows, valid and binding upon the *res* real estate, but have no binding force and effect upon the defendant personally because there was no personal service of process upon him within the jurisdiction of the Illinois court and no personal appearance by him or his attorney in those proceedings. The records of such judicial proceedings are, so far as the defendant's personal liability is concerned, of no force and effect. 34 C. J. pp. 1137–1140, and cases cited.

Plaintiff claims defendant had actual knowledge of the pendency of the suit to foreclose the mortgage in Illinois and is, therefore and thereby, estopped from making the defense set up in this case to plaintiff's action on the note. Though the defendant may have had full knowledge of the pendency of the foreclosure proceedings in Illinois, he could stand upon his legal rights and not appear and subject himself to the jurisdiction of the Illinois court. Not having been served with process and not having appeared in person or by attorney, neither the statutes of Illinois nor the decree of the court or the proceedings had thereunder are binding upon the defendant personally or establish his personal liability or the amount due upon the promissory note sued upon. No personal decree for deficiency binding upon the defendant could have been made by the Illinois court, nor could the facts constituting the indisputable basis of personal liability upon the mortgage note be irrevocably fixed under the circumstances by the decree of the Illinois court and the proceedings for the sale of the property and the sale thereof thereunder. The right of defendant to resist personal liability upon the mortgage note could not be adjudicated in proceedings in which no jurisdiction

was acquired over him personally by service of process within the jurisdiction of the court or by his appearance in the chancery proceedings by person or by attorney. The subject of defendant's personal liability upon the promissory note and the extent thereof was properly cognizable by the circuit court of Ottawa county. Defendant had sold the mortgaged property long before foreclosure proceedings were commenced.

In *Fenton* v. *Torrey* (syllabus), 133 Mass. 138, it was held:

"A mortgagor, who has conveyed his equity of redemption, but remains personally liable upon the mortgage note, and who has been compelled to pay the balance due thereon, after the proceeds of a sale by the mortgagee under the power of sale contained in the mortgage have been applied upon the note, may maintain an action against the mortgagee for misconduct in conducting the sale, by reason of which a smaller sum was obtained than otherwise would have been."

And in *Boutelle* v. *Carpenter*, 182 Mass. 417 (65 N. E. 799), it was said:

"In an action upon a mortgage note to recover the balance due after a foreclosure sale where the mortgagors were not the owners of the equity at the time of the sale we think that it is open to the makers of the note to show, as bearing upon the amount due, that the sale was not conducted as it should have been, and that more should have been realized, especially if the holder of the mortgage was himself the purchaser. Unless the makers of the note can do that they would seem to be without a remedy. In the present case the issue whether the sale was properly conducted was raised by the pleadings, and evidence in regard to it was therefore admissible. * * * We think that it was competent for the judge to con-

sider whether the sale was properly conducted and that the evidence was admissible under the pleadings.''

The rule is thus stated in 3 Jones on Mortgages (8th Ed.), p. 18, § 1583:

''In a suit for deficiency against a mortgagor who was not the owner of the equity of redemption at the time of the foreclosure sale, he can show that the sale was not properly conducted, and that a higher price should have been obtained for the property, especially if the holder of the mortgage was the purchaser.''

''In an action upon a mortgage note to recover the balance due after a foreclosure sale, where the mortgagor is not the owner of the equity at the time of sale—the fact in the case at bar—it is open to the maker of the note to show as bearing upon the amount due that the sale was not conducted as it should have been and that more should have been realized; especially if the holder of the mortgage was himself the purchaser at the sale.'' *Kavolsky* v. *Kaufman,* 273 Mass. 418 (173 N. E. 499).

The statute of Michigan relating to the foreclosure of real estate mortgages by advertisement (3 Comp. Laws 1929, § 14425 [Stat. Ann. § 27.1221]), and the validity of foreclosure sales under such statute depend upon the power contained in the mortgage giving to the mortgagee the right to foreclose the same and the inherent authority of the States over the titles to lands within their respective borders. *Grannis* v. *Ordean, supra.*

In consequence of the authority which government possesses over things within its borders, there is jurisdiction in a court of a State by a proceeding *in rem* to affect things within the jurisdiction of the court. *Pennoyer* v. *Neff, supra; Haddock* v. *Had-*

*dock,* 201 U. S. 562 (26 Sup. Ct. 525, 5 Ann. Cas. 1);
*Grannis* v. *Ordcan, supra.* The basis of jurisdiction
to foreclose a mortgage in equity and to make a valid
decree of foreclosure by sale of the real estate, and
thus affect the title to the land without personal
service upon the defendant, depends upon the same
governing principle which upholds foreclosure by
advertisement without personal service,—that is,
upon the inherent authority of the State over all real
estate within its borders. Such real estate may be
bound, but no deficiency judgment can be recovered
where there has been foreclosure by advertisement
except after suit brought against the defendant and
personal service had upon him within the jurisdic-
tion of the court or by his personal appearance in
such suit where he is given an opportunity to be
heard and defend. The same principle governs in
case of foreclosure in chancery of a real estate mort-
gage where there is no personal service upon the de-
fendant who is outside the jurisdiction of the court
and where there is no voluntary appearance in per-
son or by attorney. Under such circumstances, no
deficiency judgment or decree can be rendered except
upon suit brought and jurisdiction acquired over the
defendant by personal service of process within the
jurisdiction of the court or by the defendant's volun-
tary appearance in person or by attorney therein.
The sale on foreclosure by advertisement is not bind-
ing as to the personal liability of the defendant, and
the decree of a court in chancery, where there is no
personal service within the jurisdiction of the court
and no appearance by the defendant, is not binding
upon the defendant personally in a suit for defi-
ciency. If a decree for deficiency was entered by the
court without jurisdiction acquired either by per-
sonal service or by entry of appearance, it would

have no validity in the State where rendered, and it cannot have in this State any more validity than it would have in the State of Illinois. The same rule applies to proceedings by attachment (*Bissell* v. *Briggs,* 9 Mass. 462 [6 Am. Dec. 88] ; *Kilburn* v. *Woodworth,* 5 Johns. [N. Y.] 37 [4 Am. Dec. 321] ; Cooley's Constitutional Limitations [6th Ed.], p. 498, and cases cited) ; to proceedings to foreclose a real estate mortgage (*Williams* v. *Follett,* 17 Col. 51 [28 Pac. 330] ; *Blumberg* v. *Birch,* 99 Cal. 416 [34 Pac. 102, 37 Am. St. Rep. 67]) ; to proceedings where the title to land was being litigated (*Pennoyer* v. *Neff, supra*) ; to proceedings for the partition of lands (*Grannis* v. *Ordean, supra*) ; and to proceedings to enforce a lien against real estate (*Pennoyer* v. *Neff, supra; Grannis* v. *Ordean, supra*). In all these cases, no valid judgment can be rendered fixing personal liability upon the defendant without personal service of process within the State, or by his appearance in person or by attorney in the proceeding, because the fundamental requisite of due process of law, the opportunity to be heard, is wanting. *Louisville & Nashville R. Co.* v. *Schmidt,* 177 U. S. 230 (20 Sup. Ct. 620) ; *Simon* v. *Craft,* 182 U. S. 427 (21 Sup. Ct. 836) ; *Grannis* v. *Ordean, supra.* The proceeding is *in rem* and not *in personam.* It binds the thing, but does not bind the person. The same basic principle applies to cases of foreclosure of real estate mortgages by advertisement.

It is conceded that where suit is brought for deficiency in case of foreclosure by advertisement which has no binding force upon the defendant except as to the property, defendant may show, where the holder of the mortgage is the purchaser of the property, that the property was worth much more than the amount bid on the foreclosure, because he can be per-

sonally heard and make defense in no other way. In case a suit upon the note is instituted after foreclosure of a real estate mortgage in equity in another State, in which the defendant was not served with process and in which proceedings he did not appear in person or by attorney, such foreclosure may be binding as to the real estate, but it has no binding force except as to property within the jurisdiction of the court, and the defendant may show anything in his defense to a suit upon the note that he could show in case of foreclosure by advertisement. He can be personally heard and make defense in no other way.

The effect of holding the defendant may not make the defenses pleaded in this case is to hold that the decree of the chancery court of Illinois and the proceedings had thereunder, though void as a decree *in personam* against the defendant, is yet in full force and effect and binding upon him,—though such decree was rendered without any jurisdiction over the person of the defendant and is, therefore, not binding upon him, it constitutes a valid adjudication of his personal liability,—that though no valid decree of the Illinois court could have been rendered in the State of Illinois binding the defendant personally, the record of such judicial proceedings is binding and conclusive evidence in this State of the defendant's personal liability,—though it would have been invalid for the Illinois court to have rendered a decree binding the defendant personally, the effect of the decree rendered in the State of Illinois without personal service upon the defendant within the jurisdiction of the court and without his voluntary appearance is valid and binding upon him here. The effect of such holding would be to give the proceedings of the Illinois court in chancery, without any jurisdiction of the defendant personally, the same

force and effect as if in such proceedings the Illinois court had acquired jurisdiction of the defendant personally. Such a position is neither logically nor legally maintainable.

In proceedings of this character, the fair market value of the premises sold is a question of fact, *Stone* v. *Haskell,* 212 Mass. 283 (98 N. E. 1032) ; 3 Jones on Mortgages (8th Ed.), p. 18, § 1583, and the burden of proving that a higher price should have been obtained upon the sale of the property was upon defendant. *Vahey* v. *Bigelow,* 208 Mass. 89 (94 N. E. 249) ; *Stone* v. *Haskell, supra;* 3 Jones on Mortgages (8th Ed.), p. 18, § 1583.

After the cause was heard and submitted to the trial court, plaintiff made an application to reopen the case for the purpose of offering proof of the publication in the foreclosure proceedings in Illinois and mailing of notice thereof to defendant of an order of appearance of defendant made in the foreclosure case in Illinois. The trial court denied plaintiff's motion. Granting or denying the motion rested in the sound judgment and discretion of the trial court. Had the facts sought to be shown been admitted, it could make no difference in the disposition of this case.

We find it unnecessary to pass upon whether there was such an extension of time as under the circumstances would release defendant and appellee from liability.

Judgment of the trial court affirmed, with costs.

BUSHNELL, SHARPE, NORTH and McALLISTER, JJ., concurred with POTTER, J.

WIEST, J. (*dissenting*). I do not concur.

The mortgage, executed May 23, 1927, was in form a trust deed importing foreclosure by court decree. The decree directed the sale by a master in chancery,

with report thereof subject to confirmation by the court. The master held the sale and made report which was approved and the sale confirmed.

The foreclosure in equity in the Illinois court was a proceeding *in rem*. No irregularity therein is disclosed. The sale by the master was under decree and not under power conferred upon or exercised by the mortgagee.

There is a distinction between a "suit for deficiency after a sale under power" and a "suit at law for deficiency after sale under decree in equity." Jones on Mortgages (8th Ed.), §§ 1583, 1584.

Where a sale is under decree and conducted by a master of the court and report thereof is made and confirmed there is a judicial determination upon which may be predicated a suit at law to recover the deficiency. While it is not a judgment, unless so adjudged, the debt, however, is evidenced by judicial action and report and, unless the sale is set aside, the inadequacy of the price is not open as a defense in an action at law to recover the deficiency.

As pointed out in *Kavolsky* v. *Kaufman*, 273 Mass. 418 (173 N. E. 499), (sale by advertisement under power):

"It is the duty of the mortgagee, where the mortgage leaves him a power of selection of methods of giving notice and of making the sale, to act reasonably and to exercise a sound discretion. In such a case it is his duty to act as a reasonably prudent man would to obtain a fair price for property which has a well known value. * * * In an action upon a mortgage note to recover the balance due after a foreclosure sale, where the mortgagor is not the owner of the equity at the time of sale—the fact in the case at bar—it is open to the maker of the note to show as bearing upon the amount due that the sale was not conducted as it should have been and that more

should have been realized; especially if the holder of the mortgage was himself the purchaser at the sale. *Howard* v. *Ames,* 3 Met. (Mass.) 308; *Fenton* v. *Torrey,* 133 Mass. 138; *Boutelle* v. *Carpenter,* 182 Mass. 417, 419 (65 N. E. 799).''

Foreclosure sales, under decrees, for grossly inadequate prices, have been set aside and resales ordered but only on application to the court wherein the foreclosure was had, or by a bill in equity for such purpose charging fraud perpetrated and never by collateral attack in an action at law upon the note obligation.

If the mortgagee exercises foreclosure under a power of sale he is bound to the observance of good faith and to a careful regard for the interest of his principal, and if the mortgagor can establish a purchase by the mortgagee at such a grossly inadequate price as to shock the conscience of the court, to the point of establishing fraud, then the mortgagor, in a suit upon the primary obligation, may make such defense in an action at law.

The defense in the case at bar is a collateral attack upon the decree of the Illinois court and proceedings thereunder. As said before, the sale was under decree and not under power conferred upon or exercised by the mortgagee. The decree ordering sale, with sale thereunder, and confirmation thereof by the court, disposed of the *res* and, in the suit at bar, must be taken as conclusive determination of adequacy of the bid. Over such matter there exists an adjudication *in rem* which controls the disposition of the *res* and beyond successful collateral attack.

The judgment should be reversed and a new trial granted, with costs to plaintiff.

CHANDLER, J., concurred with WIEST, J. BUTZEL, C. J., did not sit.